NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-640

STATE IN THE INTEREST OF S.L., B.B., C.W.

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 2885
HONORABLE JIMMY W. WILEY, DISTRICT JUDGE AD HOC

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.

AFFIRMED.

**Brian C. McRae**
**Attorney at Law**
**111 N. Washington Avenue**
**Mansfield, Louisiana 71052**
**(318) 872-2973**
**COUNSEL FOR APPELLANT:**
    **C. W., Sr. (father of C.W., Jr.)**

**Kimberly S. Smith**
**State of Louisiana, Department of Children and Family Services**
**1525 Fairfield Avenue, Room 850**
**Shreveport, Louisiana  71101**
**(318) 676-7347**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Children and Family Services**

**Jacqueline C. Williams**
**Acadiana Legal Services**
**134 St. Denis Street**
**Natchitoches, Louisiana  71457**
**(318) 352-7220**
**COUNSEL FOR APPELLEE:**
    **C. W., Jr. (child)**

**D. Scott Kendrick**
**Attorney at Law**
**1762 Texas Street**
**Natchitoches, Louisiana  71457**
**(318) 354-9146**
**COUNSEL FOR OTHER APPELLEE:**
    **R. B. (father of R.B.)**

**Richard Woolbert**
**Attorney at Law**
**750 Southfield Road, Suite C**
**Shreveport, Louisiana  71106**
**(318) 219-3921**
**COUNSEL FOR OTHER APPELLEE:**
    **C. L. W. (mother of C.W., Jr., S.L. and R.B.)**

**SAVOIE, Judge.**

C.W., Sr.[1] appeals the decision of the trial court terminating his parental rights to the minor child, C.W., Jr. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

C.L.W. is the mother of three children, S.L. (born September 29, 1999), B.B. (born May 14, 2002), and C.W., Jr. (born December 22, 2008). C.W., Sr. is the father of C.W., Jr. and the step-father to S.L. and B.B. On July 7, 2014, the Department of Children and Family Services (DCFS) received a report of possible sexual abuse of sexual manipulation/fondling and passive sexual abuse concerning the minor children, S.L. and B.B., by C.W., Sr. After an investigation, the children were deemed by DCFS to be in present and impending danger. When told of the sexual abuse, the children's mother, C.L.W., refused to believe and/or protect her children from the harm. In addition to the sexual abuse, DCFS also found evidence of poor parenting practice, including purchasing and using marijuana in front of the children. The children also indicated possible physical abuse in the past, as well as domestic abuse between C.L.W. and C.W., Sr.

As a result of the investigation, an Oral Instanter Order was issued on July 8, 2014, and signed by the trial court on July 9, 2014, placing S.L., B.B. and C.W., Jr. in the custody of DCFS. S.L. began living with her father and step-mother. B.B. and C.W., Jr. were placed in relative placement through DCFS with their maternal grandparents, N.L. and R.L. During the pendency of this matter, C.W., Sr. was incarcerated in the Sabine Parish Detention Center in Many, Louisiana, and he did not have visitation rights with C.W., Jr. because there was a "no contact order in place" relating to the sexual abuse.

On September 22, 2014, in open court, DCFS dismissed its case regarding S.L. as she was now in the custody of her father. On November 13, 2014, B.B. and C.W.,

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor children involved in the proceeding.

Jr. were adjudicated as children in need of care, and a case plan was submitted. DCFS's placement of the children with the maternal grandparents was approved.

A termination of parental rights hearing concerning B.B. and C.W., Jr. was held on April 7, 2017. C.L.W. stipulated to the termination of her parental rights as to both children. The trial court terminated the parental rights of B.B.'s father, R.B. He has not appealed that decision. The trial court also terminated the parental rights of C.W., Sr. He now appeals the judgment.

## DISCUSSION

*I. Standard of Review*

The standard of review applicable to a termination of parental rights case is set forth in *State in Interest of M.C.*, 16-69, pp. 7-8 (La.App. 3 Cir. 6/1/16), 194 So.3d 1235, 1240-41, *writ denied*, 16-1273 (La. 9/6/16), 205 So.3d 918 (citations omitted), which states:

> "A trial court's findings on whether or not parental rights should be terminated are subject to the manifest error standard of review." In a case involving the involuntary termination of parental rights, there are two separate private interests involved: those of the parents and those of the child. A parent has a natural and fundamental liberty interest in the continuing companionship, care, custody, and management of their children's lives which warrants great deference. "In opposition to the parent's interest is the child's interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." In termination proceedings, the interest of the parent must be balanced with the interest of the child, and "courts of this state have consistently found the interest of the child to be paramount over that of the parent."

Louisiana Children's Code Article 1035(A) requires that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." In a termination of parental rights case, DCFS must establish two factors: (1) one of the grounds listed in La.Ch.Code art. 1015 by clear and convincing evidence; and (2) that the termination of parental rights is in the children's best interest. *State in Interest of M.C.*, 194 So.3d 1235.

## II. *Louisiana Children's Code Article 1015*

In order to terminate a parent's right, DCFS must first prove, by clear and convincing evidence, one of the grounds listed in La.Ch.Code art. 1015. In its Reasons for Judgment dated May 5, 2017, the trial court found the following as it relates to C.W., Sr.:

> The basis (grounds) set forth for termination of the parental rights of [C.W., Sr.] is that [C.W., Sr.] was convicted of Molestation of a Juvenile pursuant to LA. R.S. 14:81.2(D) in the case captioned as "State of Louisiana vs. [C.W., Sr.], Docket No. 73837of the Eleventh (11th) Judicial District Court for the Parish of Sabine, Louisiana."

> The evidence submitted in the trial proved by clear and convincing evidence that [C.W., Sr.] was convicted of Molestation of a Juvenile under the age of 12 years of age. Certified court minutes were received into evidence. Also, he testified in the trial that he was serving his time and working in a part of the prison whereby he earns money. However, he has not paid any money for support of his son.

> The victim of his crime was his minor female step-child, living and residing in the family home of [C.W., Sr.] and his wife [C.L.W.]. His sexual exploitation and abuse of his minor stepdaughter at the family home constitute extreme abuse, cruel and inhumane treatment below the reasonable standard of human decency. His conduct more than likely resulted in psychological injury to his victim. His parental misconduct toward his stepdaughter was cruel and inhumane treatment which justifies the termination of his parental rights over his son, [C.W., Jr.].

> [C.W., Sr.] was sentenced to serve fifty-eight (58) years at hard labor with the Louisiana Department of Corrections with a mandatory service time of twenty-five (25) years.

> In accord with C.J.P. 1015(6), the period of incarceration is of such a duration that [C.W., Sr.] will not be able to care for the child for a lengthy period of time and his son deserves a safe, stable, and permanent home.

The trial court based its decision on La.Ch.Code art. 1015(6), which sets forth the grounds for terminating parental rights. We note that, at the time of the trial in this matter, La.Ch.Code art. 1015(6) had been amended by 2016 La. Acts No. 608, §1. Louisiana Children's Code Article 1015(6), relating to a parent sentenced to a period of incarceration, was renumbered and is now La.Ch.Code art. 1015(7). There were no substantive changes made to this paragraph. It is clear that the trial court was

referencing La.Ch.Code art. 1015(7) in its reasons for ruling. As a ground for termination of parental rights, La.Ch.Code art. 1015(7) states:

> The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.

The evidence shows that C.W., Sr. was convicted of Molestation of a Juvenile, with the victim being his step-daughter, who is also C.W., Jr.'s half-sister. The evidence further shows that he was sentenced to fifty-eight years in the custody of the Department of Corrections. He is required to serve twenty-five of those years before being eligible for parole. Moreover, although he admitted to earning money in prison, he has not provided any support for C.W., Jr.

Considering the foregoing, we find that the trial court did not commit manifest error in finding that DCFS met its burden of proof under La.Ch.Code art. 1015(7).

### III. Best Interest of the Child, C.W., Jr.

Next, DCFS must prove that the termination of parental rights is in the best interest of the child. In this respect, the trial court found:

> The testimony of [C.W., Jr.]'s maternal grandparent, [R.L.], is impressive and he has shown by his conduct his total commitment to serving the best interest and welfare of his grandson. [R.L. and N.L.] stepped forward immediately to care for their grandson.

> [C.W., Jr.] has been in the care of [R.L. and N.L] since his original placement with [DCFS]. [R.L.]'s testimony reveals he and grandmother, [N.L.], are absolutely dedicated to the care, safety, and wellbeing of their grandson. [C.W., Jr.] is loved and cared for by [R.L. and N.L.] and he is happy and is succeeding in school.

> [DCFS], in its case, reports that the grandparents have been totally cooperative in all activities as caretakers involving their grandson. The case plan review of June 23, 2016 reveals the behavioral changes of [C.W., Jr.] and evidences his progress and that [R.L. and N.L] have completed MAPP classes to become certified foster parents.

4

The record reflects that C.W., Jr. has been placed in the loving and secure home of his maternal grandparents with his sister B.B. He has been in this home since the beginning of his time in DCFS custody, which at this point has been three and a half years. C.W., Jr. has not seen his father since November 10, 2014. The evidence shows that C.W., Jr. is doing very well in school under the care of his grandparents, receiving straight A's. He is happy, well-adjusted, and thriving in his new environment, and his grandparents are in the process of becoming certified to adopt their grandchildren.

C.W., Sr. argues in his brief that "it is not in [C.W., Jr.]'s best interest to grow up in an environment that produced [C.L.W.]" This seems to be his only argument. No evidence has been produced to bolster this assertion. C.W., Sr. does not put forth anyone else who would be better able to care for his son. As such, we find this contention without merit. There is ample evidence showing that R.L. and N.L are providing a safe and stable environment for C.W., Jr., one that he has called home for three and a half years. Over these years, there have been many meetings with DCFS, reports, and therapy to repair the damage done by his parents. DCFS believes this placement to be in the best interest of C.W., Jr., and the trial court agreed.

When weighing the rights of the parent against the rights of the children, "courts of this state have consistently found the interest of the child to be paramount over that of the parent." *State in Interest of M.C.*, 194 So.3d at 1241. As such, we find that the trial court did not commit manifest error in determining that termination of C.W., Sr.'s parental rights was in the best interest of C.W., Jr.

**DECREE**

The judgment of the trial court is affirmed. All costs associated with this appeal are assessed to C.W., Sr.

**AFFIRMED.**

5

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—
Courts of Appeal.  Rule 2–16.3.